IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BROWN AND BROWN OF                                            PLAINTIFF/
MISSISSIPPI, LLC                                    COUNTER-DEFENDANT

v.                                          CAUSE NO. 1:16CV327-LG-RHW

                                                             DEFENDANT/
SHERRIE BAKER                                      COUNTER-PLAINTIFF

MEMORANDUM OPINION AND ORDER CONCERNING
THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are the Motions [60, 62] for Summary Judgment

filed by the plaintiff/counter-defendant Brown and Brown of Mississippi, LLC

(hereafter referred to as "Brown") and the Motion [64] for Summary Judgment filed

by the defendant/counter-plaintiff Sherrie Baker.  In its first Motion [60], Brown

seeks summary judgment as to its claims against Baker for injunctive relief,

violations of the Mississippi Uniform Trade Secrets Act, and tortious interference

with prospective business relations.  In its second Motion [62], Brown seeks

summary judgment as to Baker's counterclaims for: defamation/libel/slander,

interference with business relationships, breach of contract, gender discrimination,

age discrimination, retaliation, and hostile work environment.  In her Motion [64],

Baker seeks summary judgment as to Brown's claims for injunctive relief, violations

of the Mississippi Uniform Trade Secrets Act, and tortious interference with

prospective business relations.  The Motions have been fully briefed.  After

reviewing the submissions of the parties, the record in this matter, and the

applicable law, the Court finds that Brown's Motion for Summary Judgment as to

its claims against Baker should be denied.  Baker's Motion for Summary Judgment is granted as to Brown's claim for injunctive relief but denied in all other respects. Brown's Motion for Summary Judgment as to Baker's counterclaims is granted.

## FACTS

In January 1999, Baker began working at Sawyer Foster Insurance, where she specialized in selling health benefits insurance.  (Baker Resp., Ex. A at 2, ECF No. 76-1).  Sawyer Foster Insurance was purchased by Beecher Carlson in May 2006, and Baker signed an Employment Agreements that provides:

> At all times during Executive's employment and during the Restricted Period, Executive hereby expressly covenants and agrees that she will not, on her own behalf or on behalf of any other person, company, partnership, corporation or other entity, solicit, divert, or take away Business from any Customer of Employer for the purpose of providing insurance brokerage, risk management, or related consulting services that are competitive with the Employer's Business.

(*Id.*; Brown Mot., Ex. 1 at §7(f), ECF No. 63-2).  The term "Restricted Period" in the Agreement "means a period of two (2) years following termination of Executive's employment with the Company, regardless of the reason for the termination." (Brown Mot., Ex. 1 at 6 § 7(a)(i), ECF No. 63-2).  The Agreement further provides "The Company, may, without Executive's consent, assign this Agreement to any affiliate or any successor to its business."  (*Id.* at § 12).

Brown purchased the agency from Beecher Carlson on or about July 1, 2013. (Baker Resp., Ex. A at 3, ECF No. 76-1).  In February 2014, Brown promoted Baker to the position of Profit Center Leader with a salary of $125,000 plus bonuses for meeting profit goals.  (*Id.*)  Baker claims that Thomas Sawyer — one of the agency's

former owners who continued to work at the agency after it was purchased by Beecher Carlson and Brown — began verbally abusing her and acting hostile toward her after she was promoted. (*Id.*) Baker served as Sawyer's supervisor and she had the authority to terminate him, but she claims that one of Brown's regional managers discouraged her from terminating Sawyer. (Brown Mot., Ex. 46 at 19-34, ECF No. 63-47).

On January 26, 2015, Brown's regional manager informed Baker that she would no longer serve as profit center leader. (Baker Resp., Ex. A at 3, ECF No. 76-1). Brown's regional manager testified that the Gulfport, Mississippi office no longer needed a separate profit center leader because the Gulfport office was consolidated with its New Orleans office. (Brown Mot., Ex. 6 at 103, ECF No. 63-7; Brown Mot., Ex. 50 at 23, ECF No. 63-51). After that point, Mark Pennebaker served as profit center for the New Orleans and Gulfport offices. (Brown Mot., Ex. 6 at 128, ECF No. 63-7).

After she was removed from the profit center leader position, Baker's salary was $100,000 with a thirty percent commission rate on new business. (Brown Mot., Ex. 8 at 2, ECF No. 63-9). Baker claims that she was excluded from meetings and communications and she was asked to introduce an agent newly hired by Brown to her clients. (Baker Resp., Ex. A at 8, ECF No. 76-1).

In May 2015, Baker filed documents with the Secretary of State to create her own agency, Coast Benefit Professionals, LLC. (*Id.* at 8). On June 29, 2015,

Baker's assistant Samantha Gunter Wilson[1] resigned her position with Brown effective July 10, 2015. (Brown Mot., Ex. 12, ECF No. 63-13). Six days earlier, Wilson had emailed her contact list — which included Wilson's personal contacts as well as the contact information, user names and passwords[2] of some of Brown's customers — from her Brown email address to her private email address. (Brown Mot., Ex. 14 at 42, 45, ECF No. 63-15). Wilson sent additional Brown customer information to her private email address on July 6, 2015. (*Id.* at 59). She sent a customer's contract with Brown to Baker's private email address on July 7, 2015. (*Id.* at 66-68). Wilson testified that she sent the contract to Baker pursuant to Baker's request. (*Id.*) Wilson testified that these emails were probably sent because Wilson and Baker were continuing to provide services to clients on behalf of Brown and occasionally they worked from home. (*Id.* at 71). However, Wilson admitted that these particular customers became customers of Baker's agency. (*Id.* at 59, 69).

On July 6, 2015, Baker wrote a letter to Brown resigning her position effective July 17, 2015. (Brown Mot., Ex. 15, ECF No. 63-16). As early as July 10, 2015, Baker had emailed an announcement concerning her new agency to various

___

[1] At the time of her resignation, Baker's assistant's name was Samantha Gunter, but her name became Samantha Gunter Wilson after she was married on July 10, 2015. (Brown Mot., Ex. 17 at 7, ECF No. 63-18). The Court will refer to her by her married name in this opinion. Wilson had told Brown that she was leaving the agency, because she was getting married and her husband had told her she no longer had to work. (Brown Mot., Ex. 13 at 14-15, ECF No. 63-14).
[2] It appears that the user names and passwords could be used to update or alter the customers' insurance benefits with their insurance providers.

individuals. (Brown Mot., Ex. 14 at 2-4, ECF No. 63-15). On July 13, 2015, Baker

sent an email to a Brown client, but the signature line of the email referenced

Baker's new agency, not Brown. (Brown Mot., Ex. 16 at 6, ECF No. 63-17). On July

22, 2015, after Baker's resignation went into effect, a representative of another

Brown client noted in an email that Baker was going to submit a quote for the

customer's business and that Baker had access to all of the customer's data. (*Id.* at

9). Another client email revealed that Baker was using the same fee structure as

Brown. (*Id.* at 11). Wilson began working for Baker's agency in August 2015.

(Brown Mot., Ex. 17 at 7, ECF No. 63-18).

On June 24, 2015, Baker filed a charge for gender and age discrimination

with the Equal Employment Opportunity Commission's Jackson, Mississippi office.

(Brown Mot., Ex. 18, ECF No. 19). The basis of the charge was Brown's alleged

demotion of Baker on January 26, 2015. (Brown, Mot., Ex. 20, ECF No. 63-21).

Brown received notice of the charge on July 8, 2015. (Brown Mot., Ex. 19, ECF No.

63-20). The EEOC provided Baker with notice of her right to sue Brown on October

20, 2015, and instructed her that her lawsuit must be filed within ninety days of

receipt of the notice. (Brown Mot., Ex. 27, ECF No. 63-28).

On July 24, 2015, Brown sued Baker in the Second Judicial District of the

Chancery Court of Harrison County, Mississippi, alleging violations of the

Mississippi Uniform Trade Secrets Act and Tortious Interference with Prospective

Business Relations. The Chancery Court awarded summary judgment to Brown "to

the extent that Ms. Baker signed a binding employment agreement with [Brown]."

(Brown Mot., Ex. 32 at 171, ECF No. 63-33; State Court Record at 288-89, ECF No. 5-2).

On November 17, 2015, Baker filed a second charge of discrimination with the EEOC's Mobile, Alabama office, alleging constructive discharge, gender discrimination, age discrimination, retaliation, and hostile work environment. (Brown Mot., Ex. 29, ECF No. 63-30). She claimed that the discrimination took place between January 26, 2015, and July 6, 2015. (*Id.*)

On August 11, 2016, Baker filed counterclaims against Brown for defamation/libel/slander, interference with business relationships, breach of contract, gender discrimination, age discrimination, retaliation, and hostile work environment. (Am. Mot. to Dismiss, Answer & Affirmative Defenses & Counterclaims, ECF No. 1-1). Brown removed the case to this Court on the basis of federal question jurisdiction created by some of the counterclaims.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25.

# I.  BROWN'S CLAIMS AGAINST BAKER

## A.  MISSISSIPPI UNIFORM TRADE SECRETS ACT

The Mississippi Uniform Trade Secrets Act (MUTSA) provides: "Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation [of trade secrets]."  Miss. Code Ann. § 75-26-7(1).  If the misappropriation is willful and malicious, the court may award punitive damages and attorneys' fees.  Miss. Code. Ann. § 75-26-7(2); Miss. Code Ann. § 75-26-9.

A "trade secret" is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that: (i) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code Ann. § 75-26-3(c).  "Misappropriation" includes disclosure or use of a trade secret by a person who:

> [a]t the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: a. [d]erived from or through a person who had utilized improper means to acquire it; b. [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or c. [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . .

Miss. Code Ann. § 75-26-3(b).  "Generally, to establish trade secret misappropriation, the complaining party must demonstrate: 1) that a trade secret existed; 2) that the trade secret was acquired through a breach of a confidential

relationship or discovered by improper means; and 3) that the use of the trade secret was without the plaintiff's authorization." *Union Nat'l Life Ins. Co. v. Tillman*, 143 F. Supp. 2d 638, 643 (N.D. Miss. 2000) (quoting *Body Support Sys., Inc. v. Blue Ridge Tables, Inc.,* No. 1:96CV161-D-A, 1997 WL 560920, at *6 (N.D. Miss. Aug.12, 1997)).

Information constitutes a "trade secret" if it: (1) has "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Miss. Code Ann. § 75-26-3(d). Mississippi state and federal courts have held that a customer list can constitute a trade secret. *Fred's Stores of Miss., Inc. v. M&H Drugs, Inc.*, 725 So. 2d 902, 911 (Miss. 1998); *Tillman*, 143 F. Supp. 2d at 644.

Brown argues that Baker violated the MUTSA by using its customer data to build her own business. Baker admitted during her deposition that eight of her twelve customers were formerly customers of Brown. (Baker Resp., Ex. L1 at 9, ECF No. 76-12). Wilson testified that twelve of Brown's former customers moved to Baker's agency. (Brown Mot., Ex. 14 at 74, ECF No. 63-15). Brown has also produced emails from two of its former clients that indicate that Baker may have utilized customer data that she obtained from her employment with Brown to provide quotes to Brown's customers. (Brown Mot., Ex. 16 at 9, 11, ECF No. 63-17).

While Brown has produced evidence from which a jury could find that Baker violated the MUTSA, the evidence is not conclusive. In addition, Baker has produced a sealed expert report that opines that Brown may have suffered no damages as a result of Baker's conduct, because Brown may not have been able to provide services to the clients at issue after Baker left the agency. (Baker Response, Ex. J at 2-3, ECF No. 83). Therefore, genuine issues of material fact prevent an award of summary judgment as to Brown's trade secrets claim.

## B. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

The elements of that claim for tortious interference with business relations are:

> 1) that the defendant knew of the plaintiff's contract; 2) that the defendant's acts were intentional and willful; 3) that they were calculated to cause damage to the plaintiff in its lawful business; 4) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and 5) that actual damage and loss resulted.

*Tillman*, 143 F. Supp. 2d at 644 (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1268-69 (Miss. 1992)). As explained previously, Baker has produced a sealed expert report that opines that Brown may have suffered no damages as a result of Baker's conduct. (Baker Response, Ex. J at 2-3, ECF No. 83). Actual damage or loss is a required element of a tortious interference with business relations claim. The Court further finds that a genuine issue of material fact exists regarding whether Baker acted with malice. As a result, the Court finds that genuine issues of material fact exist precluding summary judgment as to this claim.

## C.  INJUNCTIVE RELIEF

In the conclusion to its Memorandum in Support of its Motion for Summary Judgment, Brown asks the Court to enter an injunction prohibiting Baker from selling insurance to Brown's clients for a period of two years.   However, earlier in its Memorandum, while discussing its request for injunctive relief, Brown states: "In reality, Baker has successfully[ ] delayed resolution of this matter for the past two (2) years and Brown's current position is that Baker should be forced to return the dollars she has received in that period of time . . . ."  (Brown Mem. at 14, ECF No. 61).[3]

To the extent that Brown is continuing to seek injunctive relief based on the two-year non-solicitation clause in the employment agreement, the Court finds that Brown's request must be denied because the non-solicitation clause in the employment agreement has expired.  *See Timber Lake Foods, Inc. v. Estess*, 72 So. 3d 521, 527 (¶19) (Miss. 2011).  As a result, Baker's Motion for Summary Judgment as to Brown's request for injunctive relief is granted, and Brown's Motion for Summary Judgment as to its request for injunctive relief is denied.  Brown may seek monetary damages for any losses it suffered through its remaining claims.  *See id.*

---

[3] It is unclear how Baker could have unilaterally delayed resolution of Brown's claim for injunctive relief.  Brown removed the case to this Court on September 6, 2016, but Brown never filed a motion seeking a preliminary injunction before this Court.

## II.  BAKER'S COUNTERCLAIMS

### A.  DEFAMATION, LIBEL, SLANDER, AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Baker concedes that Brown is entitled to summary judgment as to her claims for defamation, libel, slander, and tortious interference with business relations. (Baker Resp. at 1 n.1, ECF No. 80).

### B.  BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

It appears that Baker has abandoned her breach of contract claim because all of her arguments in response to Brown's Motion pertain to her claim for breach of the covenant of good faith and fair dealing.  To the extent that Baker may wish to continue to pursue a breach of contract claim, she has not provided sufficient evidence or argument to avoid summary judgment as to that claim.

As for Baker's claim for breach of the duty of good faith and fair dealing, the Mississippi Supreme Court has held that there is no such implied duty in employment contracts.  *See Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1248 (Miss. 2000).  However, Baker claims that the Mississippi Supreme Court has indicated that it may in the future recognize such a duty, because the court stated in the *Cothern* decision that even if it were to adopt such a rule, the plaintiff in that case would not prevail under the circumstances presented.  *See id.*  It would be inappropriate for this Court to recognize a duty that has never been recognized by the Mississippi courts.

Furthermore, the alleged conduct Baker cites — her promotion to a managerial position, difficulties she experienced in the managerial position, alleged harassment by a subordinate, her alleged demotion from the managerial position, requests that she introduce a new employee to clients, excluding her from meetings — would not support a claim for breach of the covenant of good faith and fair dealing. *See Ravenstein v. Cmty. Tr. Bank*, 141 So. 3d 396, 403–04 (Miss. Ct. App. 2013) (holding that "bad faith requires a showing of more than bad judgment or negligence; rather, bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity"). The rest of the alleged conduct that Baker relies on occurred after Baker had resigned her position with Brown. An implied duty of good faith and fair dealing could not have survived the termination of the employment agreement. *See Cothern*, 759 So. 2d at 1249 ("With no existing contractual obligation, there can be no implied covenant.")

## C.  TIMELINESS OF BAKER'S EMPLOYMENT DISCRIMINATION CLAIMS

"If a plaintiff files suit after the 90-day statute of limitations a court will dismiss the plaintiff's Title VII action." *Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 918 (5th Cir. 2009). "The 90-day statutory period is strictly construed." *Id.* The ninety-day limitations period begins on the date the plaintiff receives the right-to-sue letter from the EEOC, not the date the letter was issued. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). If the date of receipt is either unknown or disputed, the court can presume that the letter was received anywhere from three to seven days after the mailing of the letter. *Id.* at

379-80.  The same general requirements apply to age discrimination claims.  See 29

U.S.C. § 626(e); *Smith v. Alcorn State Univ.*, 451 F. App'x 464, 465 (5th Cir. 2011).

If a claimant filed more than one EEOC charge, the claimant "is on notice

from the date of receipt of the first dismissal letter that he has 90 days to file suit

on the claims made to the EEOC, unless the second right to sue letter is issued

pursuant to a reconsideration of the merits.  *Washington*, 351 F. App'x at 918 (citing

*Sparks v. Lowe's Home Ctr., Inc.*, 341 F. Supp. 2d 671, 674 (E.D. Tex. 2004); *Gitlitz*

*v. Compagnie Nationale Air France*, 129 F.3d 554, 557 (11th Cir. 1997)).  "To hold

[otherwise] would allow any future plaintiff to obliterate the ninety-day limitation

period by repeatedly refiling the same charge with the EEOC."  *Id.*  Since this

doctrine applies where an employee files multiple charges of discrimination

encompassing the same events, the court must consider "whether, and to what

extent, the two charges differ in scope and substance."  *See Felix v. City & Cty. of*

*Denver*, 729 F. Supp. 2d 1243, 1250 (D. Colo. 2010).

Baker filed two charges of discrimination with the EEOC.  In her first charge,

which was filed on June 24, 2015, she alleged that she was demoted due to her

gender and age on January 26, 2015.  (Brown Mot., Ex. 18, ECF No. 63-19).  The

EEOC issued the Notice of Right to Sue pertaining to Baker's first charge on

October 20, 2015.  (Brown Mot., Ex. 27, ECF No. 63-27).  The date of Baker's receipt

of the Notice of Right to Sue is not in the record, but the Court may assume that

Baker received the charge seven days after it was mailed.  As a result, she was

required to file her lawsuit alleging gender and age discrimination related to the

alleged demotion on or before January 25, 2016. Baker filed her counterclaims on August 19, 2016. (Am. Mot. to Dismiss, Answer & Affirmative Defenses, & Countercls., ECF No. 1-1). Brown is, therefore, entitled to summary judgment as to all of Baker's employment discrimination claims related to her alleged demotion.

Baker's second charge, which alleged gender discrimination, age discrimination, retaliation, and a hostile work environment, was filed on November 17, 2015. (Brown Mot., Ex. 29, ECF No. 63-30). She once again referenced her alleged demotion, and she claimed that her July 6, 2015 resignation constituted a constructive discharge. (Brown Mot., Ex. 30, ECF No. 30). The Court has not located a second Notice of Right to Sue in the record, and the parties have not provided the date on which the EEOC sent any such Notice. The Court will address each of the claims asserted in Baker's second charge separately.

### D. RETALIATION —AGE AND GENDER DISCRIMINATION

Section § 2000e–3(a) of Title 42 prohibits an employer from "discriminat[ing] against any of his employees or applicants for employment . . . because [the employee] has . . . made a charge . . . under this subchapter." 42 U.S.C.A. § 2000e–3(a). Similarly, the Age Discrimination in Employment Act prohibits an employer from discriminating against an employee or applicant for employment who has made a charge or participated in a proceeding under this act. 29 U.S.C.A. § 623(d). A plaintiff establishes a prima facie case of retaliation under Title VII or the ADEA by showing: (1) that she engaged in protected activity; (2) she suffered an adverse employment action; and (3) that there was a causal connection between the

participation in the protected activity and the adverse employment decision. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407-08 (5th Cir. 1999).

Baker claims that Brown retaliated against her for filing her first EEOC charge. Although Baker admits that she had resigned her position with Brown before Brown had notice of her first EEOC charge, she alleges that the filing of this lawsuit constituted an adverse employment action. The Fifth Circuit has indicated that the filing of a lawsuit cannot be considered an adverse employment action. *EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 657 (5th Cir. 1999). Other courts that have classified the filing of a lawsuit as an adverse employment action only did so where the lawsuit was filed in bad faith or the lawsuit had no legal or factual basis. *See, e.g., EEOC v. Outback Steakhouse*, 75 F. Supp. 2d 756, 758 (N.D. Ohio 1999); *Ward v. Wal-Mart Stores, Inc.*, 140 F. Supp. 2d 1220, 1231 (D.N.M. 2001). Therefore, even if a lawsuit could be considered an adverse employment action, Brown's lawsuit against Baker was not filed in bad faith but was filed in an attempt to recover losses caused by Baker acquiring Brown's clients. As this Court has previously found, genuine issues of material fact exist that prevent this Court from granting summary judgment in favor of Baker as to Brown's claims. Given that there is sufficient factual and legal basis to justify consideration of Brown's claims by a jury, the Court finds that Brown was legally justified in asserting its claims against Baker. Therefore, Brown's filing of this lawsuit did not constitute an adverse employment action, and Baker cannot state a prima facie claim of gender-

based or age-based retaliation. Brown's Motion for Summary Judgment as to

Baker's gender-based and age-based retaliation claims is granted.

### E. HOSTILE WORK ENVIRONMENT — AGE AND GENDER DISCRIMINATION

Baker asserts hostile work environment claims under Title VII and the

ADEA.

> To prove such a claim under Title VII, a plaintiff must prove that [she]:
> (1) belongs to a protected group; (2) was subjected to unwelcome
> harassment; (3) the harassment complained of was based on the
> protected class; (4) the harassment complained of affected a term,
> condition, or privilege of employment; (5) the employer knew or should
> have known of the harassment in question and failed to take prompt
> remedial action. . . . Harassment affects a term, condition, or privilege
> of employment if it is sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive working
> environment. . . .

*Refaei v. McHugh*, 624 F. App'x 142, 147 (5th Cir. 2015) (internal citations and

quotation marks omitted). "Similarly, in order to prove a hostile work environment

claim under the ADEA, a plaintiff must establish that the employee was subjected

to harassment, either through words or actions, based on age and that the nature of

the harassment was such that it created an objectively intimidating, hostile, or

offensive work environment." *Id.*

When considering whether harassment affected a term, condition, or

privilege of employment, "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance" are

relevant factors. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir.

2009).  "The conduct must be both 'objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.'"  *Id.* (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).  In support of her hostile work environment claims, Baker claims that Brown's regional manager, Tommy Huval, asked her in December 2014 whether she "might like to spend more time or focus more on being a grandmother."  (Baker Resp., Ex. M1 at 7-10, ECF No. 76-16).  In January or February 2014, when he offered Baker the profit center leader position, Huval allegedly told Baker that Brown typically does not place women in managerial positions and asked her in early 2014 whether she was planning to retire.  (*Id.* at 11, 49).  Baker admits that she initially understood Huval's question about retirement to be a request for a long-term commitment to serve as profit center leader.  (*Id.* at 50-51).

Baker further claims that she was "given the distinct impression from [her] peers" at profit center leader meetings that she was an "anomaly," because she was not a white, young man.  She has identified no specific comments that gave her this impression but merely stated "there were a few various comments from different people."  (*Id.* at 10).  She claims that there were many gender and age-related comments but she does not remember them, because she does not "typically commit those things to memory" and does not "typically take a lot of them seriously because [she has] always worked in a man's world and that's just something you put up with normally."  (*Id.* at 17).

She also argues that one of her subordinates, Thomas Sawyer, harassed her while she served as profit center leader. (*Id.* at 20, 23). According to Baker, Sawyer was not happy because Baker did not use Sawyer's brother's real estate company to relocate Brown's Gulfport office. (*Id.* at 22). According to Baker, "[h]e also started at that point to realize a decrease in income based on production and based on [Brown's] compensation for producers." (*Id.*) Baker claims that Sawyer complained about her to her supervisor, rather than reporting his complaints directly. (*Id.*) He also blamed Baker when "[h]is expense reports were kicked back" and made "snide remarks." (*Id.*) Baker claims Sawyer did not like it that she would not manipulate his expense reports. (*Id.* at 24). She claims that Sawyer is sexist and did not want a female supervisor, but she cannot remember any specific comments that he made to her. (*Id.* at 27-28). She has testified that "Sawyer would come into [her] office, close the door and basically rant and rave." (*Id.* at 29). On one occasion, he "got up in [her] face, was yelling at [her], shaking his finger at [her]." (*Id.*) He called her "a bitch" and "told [her] that this was [her] problem with his salary and [she] was supposed to fix it." (*Id.*) She initially testified that she felt threatened by Sawyer's behavior, but then she stated that "Tom can't hurt [her] because [she's] bigger than Tom." (*Id.* at 34). She also testified that she was concerned that he would hit her but "he would have regretted it." (*Id.* at 35).

Upon considering the totality of the circumstances, the Court finds that the incidents alleged by Baker are not sufficiently severe or pervasive to establish an

age-related or gender-related hostile work environment claim.[4] *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient to demonstrate a hostile work environment claim under Title VII); *Refaei*, 624 F. App'x at 147-48 (occasional comments such as "bonehead," "old man," "grandpa," "old fart," and "pops" are insufficient to alter the conditions of employment). Baker has alleged one reference to retirement and one reference to her being a grandmother. She has also alleged one incident in which she felt somewhat threatened, but she admits she was capable of handling this incident and that she was not that frightened by it. Furthermore, based on Baker's own testimony, the bulk of the subordinate's conduct was based on his dissatisfaction with decisions Baker made while serving as profit center leader. Although Baker claims that there were numerous other comments, the fact that she does not remember those comments tends to show that the comments did not alter the terms of her employment. As a result, Brown is entitled to summary judgment as to Baker's age-based and gender-based hostile work environment claims.

## F. CONSTRUCTIVE DISCHARGE — AGE AND GENDER DISCRIMINATION

In order to state a Title VII gender discrimination claim, a plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she

---

[4] It is unnecessary for the Court to address Brown's argument that Baker's hostile work environment claims are untimely, as her claims clearly fail on the merits.

was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 350 (5th Cir.2008). Similarly, a plaintiff states a prima facie case of age discrimination by showing that she was: (1) terminated; (2) qualified for the position from which she was terminated; (3) within the protected age group at the time of termination; and (4) replaced by someone younger or outside the protected class, or otherwise discharged because of her age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 346, 455 (5th Cir. 2011). Brown argues that Baker's resignation prevents her from asserting an age or gender discrimination claim based on the termination of her employment. Baker counters that her resignation constituted a constructive discharge.

"The resigning employee bears the burden to prove constructive discharge." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005). "Demonstrating constructive discharge imposes a high burden." *Robinson v. Waste Mgmt. of Tex.*, 122 F. App'x 756, 758 (5th Cir. 2004). To prove constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Kinney Shoe Co.*, 237 F.3d 556, 566 (5th Cir. 2001)). "Constructive discharge requires a greater degree of harassment than that required to establish a hostile work environment claim." *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 841 (5th Cir. 2015). "Discrimination alone, without aggravating factors, is insufficient for a claim of

constructive discharge, as is a discriminatory failure to promote." *Brown*, 237 F.3d at 566.

Since Baker's allegations are insufficient to state a prima facie hostile work environment claim, her "alleged working conditions were not so intolerable that a reasonable person would resign." *See Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017); *see also Burrle v. Plaquemines Parish Gov't*, 553 F. App'x 392, 395 (5th Cir. 2014) ("A prerequisite to a constructive discharge claim is that it requires a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment."). Therefore, Brown is entitled to summary judgment as to Baker's age and gender discrimination claims based on allegations of constructive discharge.

## CONCLUSION

Genuine issues of material fact prevent this Court from granting summary judgment as to Brown's trade secrets and tortious interference with business relations claims. Baker is entitled to summary judgment as to Brown's claim for injunctive relief. Brown is entitled to summary judgment as to all of the counterclaims asserted by Baker. To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter this result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Motion [60] for Summary Judgment filed by the plaintiff/counter-defendant Brown and Brown of Mississippi, LLC, as to its claims against Sherrie Baker is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Motions [62] for Summary Judgment filed by the plaintiff/counter-defendant Brown and Brown of Mississippi, LLC, as to Sherrie Baker's counterclaims is **GRANTED**. Baker's counterclaims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [64] for Summary Judgment filed by the defendant/counter-plaintiff Sherrie Baker is **GRANTED** as to Brown's claim for injunctive relief and **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 7th day of November, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE